# UNITED STATES COURT OF APPEALS
### FOR THE
## FEDERAL CIRCUIT
_____

### APPEAL 14-1171

### CAPITAL MACHINE, INC. AND INDIANA FORGE, LLC,
#### PLAINTIFFS / COUNTERCLAIM DEFENDANTS – APPELLANTS,

#### AND
#### WILLIAM L. KOSS,
##### COUNTERCLAIM DEFENDANT,
#### V.

### MILLER VENEERS, INC., THOMAS A. MILLER, BENJAMIN R. MILLER, SALLY M. SANDO, ROBERT D. BRAND, INDIANAPOLIS VENEER WORKS, LLC, EGENOLF MACHINE, INC., AND MERRITT PLYWOOD MACHINERY, INC.,

#### DEFENDANTS / COUNTERCLAIMANTS – APPELLEES.

APPEAL FROM THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF INDIANA IN CASE NO. 09-CV-00702, JUDGE JANE MAGNUS-STINSON.

## OPENING BRIEF
### OF
## PLAINTIFFS /APPELLANTS
_____

Paul B. Overhauser
**Overhauser Law Offices, LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140
Tel. 317-891-1500
Fax 866-283-8549
Attorneys for Plaintiffs / Appellants
© 2014

## I.    CERTIFICATE OF INTEREST (FRAP 26.1 AND FED. CIR. R. 47.4)

The full names of the parties the undersigned represents are Capital Machine, Inc. and Indiana Forge, LLC.  These are also the names of the real parties in interest.  These parties have no parent corporations, are not publicly held, and no publicly held corporation holds 10% or more of these parties' stock.

The names of all law firms and the attorneys that appeared for the above parties in the district court or that are expected to appear in this court are:

> Paul B. Overhauser
> Overhauser Law Offices, LLC
> 740 W. Green Meadows Dr., Suite 300
> Greenfield, IN 46140

> By:  s/Paul B. Overhauser
> Paul B. Overhauser
> **Overhauser Law Offices, LLC**
> 740 W. Green Meadows Dr., Suite 300
> Greenfield, IN 46140-4019
> Phone: 317-891-1500
> Attorneys for Plaintiffs / Appellants

# Table of Contents

I.   CERTIFICATE OF INTEREST (FRAP 26.1 AND FED. CIR. R. 47.4) ........... I

II.  TABLE OF AUTHORITIES ................................................................... VI

III. STATEMENT OF RELATED CASES (FED. CIR. R. 47.5) ............................ 1

IV. STATEMENT OF JURISDICTION ................................................................. 1

V.  STATEMENT OF THE ISSUES ................................................................... 2

VI. STATEMENT OF THE CASE ................................................................... 3

VII.    STATEMENT OF FACTS. ................................................................... 4

      A.   Overview of Capital's Patents. ................................................ 4

      B.   The First Summary Judgment Motion. ................................. 5

      C.   Capital's First Appeal To This Court. ................................... 7

            1.   This Court's Description Of Capital's Patents
               Encompasses Miller's Accused TaperLock System. ................. 8

            2.   This Court Did Not Address The Meaning Of "At The
               Butt End" When It Construed "Flitch" In the Earlier
               Appeal. ................................................................... 11

      D.   Why The "At The Butt End" Limitation Is Important. ..................... 13

      E.   The "At The Butt End" Limitation Is Irrelevant And
         Hopelessly Ambiguous. ................................................... 16

      F.   This Court's Opinion In the Prior Appeal. ........................... 19

      G.   The District Court Proceedings After The Prior Appeal. ................. 20

            1.   Capital Is Ordered To File Revised Infringement
               Contentions. ................................................................... 20

            2.   Miller Moves For Summary Judgment Based On This
               Court's Construction of "Flitch." ................................. 20

3.  Capital's Response to Miller's Summary Judgment
    Motion. ....................................................................21

H.  The District Court's (Second) Summary Judgment Ruling. .............23

VIII.  SUMMARY OF ARGUMENT ....................................................26

A.  The Trial Court Erred In Granting Summary Judgment
    Because Capital's Evidence Created A Material Issue Of Fact
    As To Infringement. ..............................................26

B.  The District Court Erred In Concluding That "Flitch" Is An
    "Element" of Capital's Apparatus Claims. ......................26

C.  The District Court Erred In Stating That Capital Had Made A
    Stipulation Or Judicial Admission. ...................................26

D.  The Definition of "Flitch" Should Be Revised To Eliminate
    the "At The Butt End" Language. .....................................27

IX. ARGUMENT AND STANDARD OF REVIEW ...........................................27

A.  Standard of Review. ..........................................................27

    1.  Summary Judgment....................................................27

    2.  Claim Construction. ................................................28

B.  The Trial Court Erred In Granting Summary Judgment
    Because Capital's Evidence Created A Material Issue Of Fact
    As To Infringement. ..............................................28

    1.  Capital's Evidence Created Genuine Issues Of Fact. ...............28

    2.  This Court Should Reverse (Not Just Vacate) The
        Summary Judgment. ................................................29

C.  The District Court Erred In Concluding That "Flitch" Is An
    "Element" of Capital's Apparatus Claims. ......................30

    1.  The Standard For Determining Whether A Term in A
        Claim Preamble Is An "Element" Of the Claim. ....................30

    2.  "Flitch" Is Not An Element Of Claim 1 Of The '828
        Patent..............................................................32

iii

3. "Flitch" Is Not An Element Of Claim 1 Of The '938 Patent. ..................................................................32

D. The District Court Erred In Stating That Capital Had Made A Stipulation Or Judicial Admission. ...................................34

1. Capital's Summary Judgment Motion Was Not a "Stipulation." ...............................................................34

2. Capital's Summary Judgment Motion Was Not a "Judicial Admission" That It Could Not Prove That Miller Infringed. ........................................................35

a) The District Court Should Not Have Retroactively Re-Interpreted Capital's Ambiguous Statement In View of This Court's Later Opinion ........................................ 37

b) Capital's Statement Was Clearly Limited To The '137 Patent, So It Can Not Be Viewed As Barring Claims Explicitly Requiring A "Tapered Flitch" Or That Do Not Require Any Flitch. ....................................... 38

E. The Definition of "Flitch" Should Be Revised To Eliminate the "At The Butt End" Limitation. ...................................40

1. This Court May Consider the Propriety of the "At the Butt End" Term. ......................................................41

2. The Location Of The Relevant Taper is "Between The Ends," Not "At The Butt End." ...............................42

F. The Issues In This Appeal Are The Same, Regardless Of Whether The Final Judgment Is Based On Miller's Summary Judgment Or The District Court Reconsidering Its Ruling On Capital's Summary Judgment On Remand. ......................43

X. CONCLUSION AND RELIEF SOUGHT ........................................44

**ADDENDUM (Cir. Rule 28(a)(12))**

Final Judgment (December 13, 2013) ................................................... A0001

**PROOF OF SERVICE**

**CERTIFICATE OF COMPLIANCE**

## II.  TABLE OF AUTHORITIES

**Cases**

524 Fed. Appx. 644 (Fed. Cir. 2013).........................................................8

*Brand v. Miller*, 487 F.3d 862 (Fed. Cir.2007)..........................................9

*Capital Machine*, 524 Fed. Appx. At 651..................................................24

*Cordis Corporation v. Boston Scientific Corporation*, 658 F.3d 1347 (Fed. Cir., 2011) ......................................................................................................41

*Cybor Corp. v. FAS Techs, Inc.*, 188 F.3d 1448, 1456 (Fed. Cir. 1998) *(en banc)*.28

*Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001)* ................................16

*Gerber Scientific Int'l, Inc. v. Roland DGA Corp.*, 2011 U.S. Dist. LEXIS 57394 (D. Conn., May 27, 2011) .....................................................................41

*Huang v. Auto Shade, Inc.*, 945 F. Supp. 1307 (C.D. Cal. 1996)...........................41

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 2002 U.S. Dist. LEXIS 17 (S.D.N.Y. January 3, 2002) ....................................................41

*Medcom Holding Co. v. Baxter*, 106 F.3d 1388, 1404 (7th Cir. 1997) ............ 35, 36

*Mendenhall v. Barber-Greene Co*., 26 F.3d 1573, 1582 (Fed. Cir. 1994) .............41

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1355 (Fed. Cir., 2009) ........................................................................................28

*Toro Co. v. White Consolidated Industries, Inc*., 383 F.3d 1326 (Fed. Cir., 2004) 41

*Vizio, Inc. v. International Trade Commission*, 605 F.3d 1330, 1340 (Fed. Cir. 2010) ............................................................................................. 26, 30

**Statutes**

28 U.S.C. §§ 1331, 1338(a), and 1367(a)                                      1

28 U.S.C. §1295(a)(1)                                                        1

### III.   STATEMENT OF RELATED CASES (FED. CIR. R. 47.5)

This Court previously vacated a summary judgment for Defendants in this case based on incorrect claim constructions.  The parties in the prior appeal are all parties to this appeal.

The earlier proceeding in this Court was:

Title:      CAPITAL MACHINE, INC., et. al. v. MILLER VENEERS, INC., et. al.

Number:   2012-1288

Decided:   May 22, 2013

Panel:     Lourie, Moore and O'Malley

Citation:   524 Fed. Appx. 644 (Fed. Cir. 2013)

### IV.   STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a), in part, because the claim involves claims of patent infringement.  The District Court granted a final summary judgment in Defendants favor on December 13, 2013, and Plaintiffs filed their Notice of Appeal on December 19, 2013.  This Court has appellate jurisdiction per 28 U.S.C. §1295(a)(1).

## V.    STATEMENT OF THE ISSUES

This appeal raises the following issues:

1.    Where Capital's summary judgment evidence created a material issue of fact as to Miller's infringement, did the District Court err in granting summary judgment in Miller's favor?

2.    Did the District Court err in construing Capital's apparatus claims as requiring a "flitch" as a claim "element?"

3.    When Capital filed a motion stating the District Court's construction of "'flitch' and 'butt ends' (as that term is understood)" resulted in certain practices of Miller being outside the scope of claim 23 of the '137 patent, was this a "stipulation" or "judicial admission" that precluded Capital from continuing to assert infringement of claims already limited to "tapered flitches" or for which a flitch is not an element, even after this Court reversed other disputed claim terms?

4.    Where Capital *never* argued that a flitch's "butt end" made its claims patentable over the prior art, does prosecution history disclaimer support construing "flitch" to require a taper "*at* the *butt end*?"

# VI.    STATEMENT OF THE CASE

Plaintiffs Capital Machine Co., Inc. and Indiana Forge, LLC (collectively, "Capital") sued Defendants ("Miller")[1] for infringement of six patents. Following a *Markman* Ruling, Capital moved for summary judgment of non-infringement, which Miller did not oppose. In addition, the parties stipulated to dismissal of Miller's declaratory judgment counterclaims. The District Court granted Capital's motion for summary judgment. Capital appealed, challenging the District Court's construction of five claim terms. This Court ruled that one term, "flitch" should be construed to require a "taper" due to prosecution history disclaimer, and that this term should be construed consistently for every patent-in-suit. The constructions of the other four claim terms were significantly altered.

Following remand, the District Court ordered Capital to file new infringement contentions consistent with this Courts' revised claim constructions. Capital withdrew its infringement assertion for claim 23 of the '137 Patent. Miller then moved for summary judgment, essentially arguing that this Court's affirmation of the construction of "flitch," and its statement that the construction applied to every patent-in-suit, required a finding of non-infringement of all the Patents. The District Court granted Miller's summary judgment motion, stating

---

[1] "Miller" is used to collectively refer to all Defendants.

3

that Capital's summary judgment evidence "is irrelevant" and that "the construction of 'flitch' is indeed case-dispositive as to all of Capital Machine's infringement claims" and that the term flitch "appears" in every asserted claim. (A0002, A0014).  Capital appeals.

### VII.  STATEMENT OF FACTS.

### A.    Overview of Capital's Patents.

Plaintiffs Capital Machine and Indiana Forge (collectively, "Capital") own six Patents that teach a veneer manufacturer how to increase the amount of veneer that can be cut from a log.  The amount of the increase represents pure profit, as no additional wood is required.  The Patents reflect the inventions of Capital's former Vice President of Engineering, Defendant Robert Brand.  Mr. Brand left Capital and went to work for Defendant Miller Veneer ("Miller"), who hired him to design machines and methods that infringe Capital's Patents. (A0585).

Capital asserted that Miller infringed 19 claims of six Patents, including both method claims and apparatus claims.  Some of the method claims recite a "tapered flitch," while some merely require a "flitch."  For example:

- '619 Patent: "32.  A method for cutting veneer from a **tapered flitch** comprising the steps of:
     mounting a **tapered flitch** on a staylog . . ."
  (A0493).

- '137 Patent: "23.  A method of retaining a **flitch** on a staylog . . . comprising the steps of

providing a **flitch** . . ."
(A0461).

Capital's apparatus claims are directed toward machines that perform

operations on a flitch. While the claims include the word "flitch," a flitch is not

"an element" of the apparatus. For example:

- '828 Patent: "1. **An apparatus for preparing a flitch** for slicing . . .
  comprising:
      a plurality of **cavity forming tools** . . .
      a **flitch holder** . . .
      an **actuator** . . ."
  (A0520).

### B.    The First Summary Judgment Motion.

Following a *Markman* hearing, Capital moved for summary judgment of

non-infringement, citing various activities of Miller as compiled in the Expert

Report of Richard Stamper. (A0208, A0923). Capital included the following in its

motion:

> The Court's construction of the term "flitch" as "a portion of a log
> resulting from the log being cut along its longitudinal axis and thus
> having a taper at the butt end of the log" is dispositive as to at *least
> claim 23 of the '137 patent*. Plaintiffs allege that Miller has cut
> veneer from "untapered" flitches and flitches without ***"butt ends" (as
> that term is understood)***. The inclusion of the "tapered" and "butt
> end" limitations in the definition of "flitch" results in certain accused
> devices and practices of Miller being ***outside the scope of this patent
> claim*** as construed by the Court.
>  *(emphasis supplied)*  (A0210).

Capital and Miller stipulated to dismissal of Miller's counterclaims.

(A0212).   Miller did not oppose Capital's motion, so the Court, citing the Stamper

Expert Report, entered a final judgment of non-infringement. (A0216).  The part of

the final judgment most relevant to this appeal parrots the motion:

> Flitch.
> The Court's construction of the term "flitch" as "a portion of a log resulting from the log being  cut along its longitudinal axis and thus having a taper at the butt end of the log" is dispositive as  to at least **claim 23 of the '137 patent**.  Plaintiffs allege that Miller has cut veneer from "untapered" flitches and flitches without ***"butt ends" (as that term is understood)***.  The inclusion of the "tapered" and "butt end" limitations in the definition of "flitch" results in **certain accused devices and practices of Miller** being outside the scope ***of this patent claim*** as construed by the Court.
> *(emphasis supplied)* (A0217).

Some issues in this appeal revolve around the last sentences of each of the

above paragraphs.  As discussed below, even though Capital limited its statement

about the construction of "flitch" to "claim 23 of the '137 Patent," the District

Court later construed this as a "stipulation" that somehow applied to *all* of

Capital's other Patents.

### C.    <u>Capital's First Appeal To This Court.</u>

Capital appealed that summary judgment, arguing that the District Court had

misconstrued five claim terms.[2]

In its decision altering four of the five claim terms, this Court summarized

Capitals Patents, stating:

> Capital's patents purport to increase the yield of veneer obtained from
> each log by solving problems associated with conventional methods.
> Most notably, the patents address problems caused by the natural
> taper in flitches, which occurs because trees are thicker at the base and
> get thinner going up the trunk. When a tapered flitch is mounted on
> the staylog, its outer surface is not parallel to the cutting axis of the
> knife. As shown below, the first several slices are thus not full length
> because the knife cuts only the thicker portion of the flitch. J.A. 860.
> This is undesirable because the outside portion of the log produces the
> best quality veneer. Capital's patents attempt to solve this problem by
> positioning the flitch so its outer surface is parallel to the axis of the
> knife. This can be done either by cutting deeper holes for the dogs in
> the thicker end of the flitch than in the thinner end *or* by rotating the
> staylog so that the flitch's outer surface is parallel to the slicing knife.
> *See, e.g.*, '137 patent col.2 ll.31–42.



---

[2] The challenged claim terms were: (1) "flitch," (2) "staylog-engaging
zone," (3) "predetermined pattern/predetermined position" (4) "veneer-producing
zone," and (5) "dogs."

(A0371-0372); 524 Fed. Appx. 644 (Fed. Cir. 2013). *(emphasis in original)*

As is evident from the above discussion and picture, the relevant taper of the flitch exists *between* the two opposing ends. This is critical, as discussed below.

### 1. <u>This Court's Description Of Capital's Patents Encompasses Miller's Accused TaperLock System.</u>

This brief will temporarily digress from a chronological recitation of facts and skip ahead to Miller's accused "TaperLock" system, which as the name implies, focuses on "tapered" flitches. According to Miller's TaperLock brochure, its system works the same way and achieves the same advantages that this Court described above. This is not surprising since the TaperLock system was designed by Robert Brand, Capital's former vice president of engineering and sole inventor of the Patents-at-Issue.[3] Miller's TaperLock brochure states:

---

[3] Miller tried to patent its TaperLock system, and this resulted in an interference proceeding before the Patent Office that was later appealed to this Court. Capital prevailed when this Court confirmed that Brand had made the invention while he was still at Capital. *Brand v. Miller*, 487 F.3d 862 (Fed. Cir.2007). Capital's patent application in the interference matured into the '843 Patent which Capital asserts in this case.

The **TaperLock® System** was developed by Miller Veneers to maximize the yield from each flitch. This patented system has been used at Miller Veneers, Inc. for the last two years and has surpassed expectations in yield gain and cutting quality. The **TaperLock® System** is presently in-place on all of the staylog and slicer machines in their facility.

### Benefits of the TaperLock® System

- **Fewer cuts in the sawmill to remove natural taper**
- **Full length sheets of veneer with the first cut**
- **Less taper in veneer sheets for better clipped yields**
- **Increased stability of flitch during cutting**
- **Eliminates need for planning the holding surface of the flitch**

(A717)



Exhibit T, p. 3 (P0001091).

(A0931)

Miller's infringing Taperlock System allows it to dramatically increase the

amount of veneer it produces from the same amount of logs: +22.5% for Red Oak,

10

+27.0% for Maple, and +29.9% for Hickory, and +35% for white oak. (A0584, A0624)

## 2. **This Court Did Not Address The Meaning Of "At The Butt End" When It Construed "Flitch" In the Earlier Appeal.**

In the prior appeal, this Court concluded that the lower court had misconstrued four of the five claim terms Capital challenged on appeal. [4] The only term whose construction was affirmed was "flitch." There were two parts of the term "flitch" that Capital challenged: (a) whether a flitch must be construed to require a "taper;" and (b) what it means for a taper to be "*at* the *butt end*" of the log. In the prior appeal, this Court ruled that a prosecution history disclaimer required the term "flitch" to be construed to require a "taper." (A0375).

However, even though Capital had also challenged the "*at* the *butt end*" term in the prior appeal (A0258), this Court did not address the term in its Opinion. Instead, it affirmed the construction of "flitch" without discussing the challenged "at the butt end" term (A0376). Significantly, when prosecuting its Patents, Capital *never distinguished any prior art by making any argument about "butt*

---

[4]This court redefined: (1) "staylog-engaging zone;" (2) "predetermined pattern/predetermined position;" and (3) "dogs." While on its face this Court opinion *affirmed* the interpretation of "veneer-producing zone," its definition includes the term "staylog-engaging zone" which was changed, so the definition of "veneer-producing zone" necessarily changed too. (A0379).

*ends*." In fact, the term "butt end" does not appear *anywhere* in *any* of the Patents, or in *any* of their prosecution histories. When this Court ruled that prosecution history disclaimer applied, it quoted Capital's statements from the prosecution history that justified its application, but none of these statements make any reference to "butt end." (A0374-A0375). It is impossible for "prosecution history disclaimer" to have been a basis for adding the "butt end" limitation to the definition of flitch. The first time "butt end" appeared in this case was when Miller proposed to add it during its *Markman* briefing. Respectfully, this Court's prior failure to consider the "butt end" limitation is inexplicable, and it has, in part, spawned this appeal.

Capital contends that the term "at the butt end" is both hopelessly ambiguous and irrelevant. Because it is ambiguous, it is impossible to know how the District Court applied it to the evidence of infringement before it. Because it is irrelevant, the term should be eliminated from the definition of "flitch." To be clear, Capital submits that the "at the butt end" term is an unnecessary distraction that obscures, rather than clarifies, the meaning of Capital's claims. This Court should squarely address the proprietary of the "at the butt end" limitation of "flitch." Inclusion of the term cannot possibly be justified based on "prosecution history disclaimer," which was the rationale for adding the "tapered" limitation. The definition of "flitch" should be changed as follows:

12

Flitch - A portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper **between its ends** ~~at the butt end of the log.~~

### D.    <u>Why The "At The Butt End" Limitation Is Important.</u>

It is appropriate to explain *why* the "at the butt end" limitation is so important.  It is important because at some point, Miller changed its veneer manufacturing processes to start removing a small "wedge" from the thickest part of the large end of flitches.  While these flitches retain their *top-to-bottom* taper for *most* of the length of the flitch, for a short distance at the top of the large end, Miller removed some of the top-to-bottom taper.  This is shown in the following examples.



This flitch began as a 12 foot log with a 16" diameter at its small end and a 20" diameter at its large end.  When the log was cut in half to form a flitch, its side-to-side width tapered from 16" to 20", and its top-to-bottom height tapered from 8" to 10."

13

Miller's strategy for avoiding infringement is to cut a tiny "wedge" from the top of the flitch at its large end, so that for a small distance down the length of the flitch (two inches in this example), there is no taper in the top-to-bottom dimension in the area from which the wedge is removed:[5]



By eliminating this tiny bit of top-to-bottom taper, Miller alleges, with as much of a straight face as it can muster, that at the times when Capital inspected Miller's facilities during discovery, Miller "removed the top-to-bottom taper from all flitches." (A0800, ¶ 9). Miller makes this claim even though the *entire* length of the flitch retains its *side-to-side* taper,[6] and *almost all* of the *top-to-bottom* taper along the length of the flitch. The fact that Miller's flitches have a taper even after removing the tiny wedge was admitted by Tom Miller, Miller's President:

_____

[5] The affidavit of Miller's President, Tom Miller, states, "During the milling process, Miller Veneers removed, and continues to remove, the natural top-to-bottom taper by either cutting a wedge out of the center of the log or cutting a wedge off of the outer surface of each flitch." (A0803).

[6] Miller's "practice [is] leaving the side-to-side variation . . ." Miller's answer to Interrogatory 4 (A0767).

Q.    You mentioned that Miller Veneer has cut tapered flitches in the past; and that resulted in, what, greater yield?  I'm trying to remember the words that you said.

**A.    Yes; it had a yield influence a greater yield.**

Q.    Okay. A favorable yield, yield influence; is that right?

**A.    The higher the yield, the more favorable – or the more wood you can sell from a flitch.**
(A0665).

Miller's attempted "design-around" explains why during claim construction it did not merely ask the court to construe a flitch to have a "taper," but to have a "taper *at the butt end."*   Miller claims that by removing the tiny wedge, the flitch is no longer a "flitch" according to the claim construction it proposed.  Thus, even though it's wedge-missing "flitches" have a taper (but not in the top-to-bottom orientation for two inches "at the butt end,")[7] they still yield the advantages of Capital's inventions.  Whether this avoids infringement depends on the meaning of a taper "*at the butt end.*"

As noted in Miller's above "TaperLock" brochure, "the first sheets that are cut run the full length of the flitch."  (A0931).  This "maximize[s] the yield from

---

[7] Evidence that Miller has cut flitches with a taper between its ends is at, *e.g.,* A0700-A0702, A1021(confidential), A1028, A1030, and A1052.

15

each flitch," which is precisely the advantage this Court observed in its prior

opinion.  (A0717, A0584, A0371-0372).

### E.    The "At The Butt End" Limitation Is Irrelevant And Hopelessly Ambiguous.

If the "at the butt end" limitation is to be retained as a threshold for

infringement, it requires an understanding of exactly what the "butt end" is.[8] That

understanding is presently lacking.  Is the "butt end" the exposed semi-circular

*face* of the flitch?



If so, this flitch obviously has a "taper at the butt end," but it does not necessarily

mean that the flitch is also tapered *between its ends*, which is the location for the

taper this Court has found to be relevant.

Alternatively, does a taper "at the butt end" extend some distance down the

length of the flitch?  If so how far down does it extend?   One Inch?  One foot?

---

[8] Adding the "at the butt end" limitation was contrary to the underlying rationale for claim construction, because it does not bring clarity, but introduces confusion.  "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Half the length of the flitch?   This ambiguity explains why Capital's original motion for summary judgment included the parenthetical "(as that term is understood)" when referencing the "at the butt end" limitation.

Capital submits that if "flitch" is to be construed to have a taper, the taper should be somewhere *between the opposing ends,* not *"at* the *butt end."*  This construction would be faithful to this Court's prior opinion discussing Capital's Patents.

The following chart shows different ways in which a flitch could be cut, and some of the ways that an "end" can be considered to be "tapered."

| No. | Description | Perspective View | Top View | Side View |
|-----|-------------|------------------|----------|-----------|
| 1 | **No taper** – flitch is a rectangular prism | | | |
| 2 | Semi-cylindrical flitch. **Taper from natural curve** of log (flitch is narrow at top, wide at the bottom) | | | |
| 3 | **Additional Taper** results from ends being at acute angle with respect to bottom surface. | | | |

| No. | Description | Perspective View | Top View | Side View |
|-----|-------------|------------------|----------|-----------|
| 4 | **Additional Taper** results from ends being at acute angle with respect to top crown of the flitch. |  |  |  |
| 5 | **Additional Taper** results from end being at acute angle with respect to back bottom edge of flitch. |  |  |  |
| 6 | **Additional Taper** results from end being at acute angle with respect to front bottom edge of flitch. |  |  |  |
| 7 | **Additional Taper** where flitch body is tapered top-to-bottom |  |  |  |
| 8 | **Additional Taper** where flitch body is tapered side-to-side |  |  |  |
| 9 | **Additional Taper** where flitch body is tapered side-to-side *and* top-to-bottom |  |  |  |

Because any of flitches shown in rows 2-9 above could be said to have a taper "*at* the *butt end*," the term is hopelessly ambiguous.   However, only the

18

flitches in rows 7-9 have a taper *between their ends*, which Capital contends is the relevant location for the taper.

In granting summary judgment, the District Court did not explain how it interpreted "at the butt end." However, Capital submits that a correct construction of flitch would encompass the flitches shown in Rows 7-9, and more importantly, those in Miller's TaperLock brochure.

To reiterate, Capital's position is that the concept of the taper being "at the butt end" should be deleted and replaced with "between its ends:"

> Flitch - A portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper **between its ends** ~~at the butt end of the log.~~

## F.    This Court's Opinion In the Prior Appeal.

This section will now resume a chronological discussion. In the prior appeal, this Court ruled that "flitch" had been correctly construed as requiring a taper, but changed the definitions of all the other challenged terms.

Significantly, this Court's Opinion also stated "we interpret the term "flitch" consistently across all the patents" because "Capital's disclaimer of scope during prosecution of some of the patents-in-suit therefore applies equally to limit the term "flitch" in the other patents-in-suit." (A0376).

## G.    The District Court Proceedings After The Prior Appeal.

### 1. Capital Is Ordered To File Revised Infringement Contentions.

After this Court vacated the earlier summary judgment, the District Court ordered Capital to "file a statement . . . that sets forth their contentions of how their claims are narrowed by virtue of the Federal Circuit's and this court's *Markman* rulings." (A0094, Doc. 317). Capital amended its infringement contentions to delete its allegation of infringement of claim 23 of the '137 Patent, which was the *only* claim for which the District Court had ruled the construction of "flitch" would be "dispositive." Capital continued to assert claims that specifically required a "tapered flitch," and claims for which a "flitch" is not an element. (A0381).

### 2. Miller Moves For Summary Judgment Based On This Court's Construction of "Flitch."

After Capital filed amended infringement contentions, Miller moved for summary judgment. In a normal case, a summary judgment defendant argues that its accused product lacks at least one element of each asserted claim. Because the record is replete with evidence that Miller had cut veneer from tapered flitches, this would have been difficult for Miller to pull off. So, Miller tried a shortcut.

Miller observed that this Court had affirmed the construction of "flitch," and also ruled that the construction of flitch applied to all the Patents-In-Suit. It then proffered the following argument:

Logically, if Miller does not infringe claim 23 of the '137 Patent, as stipulated by Capital in the Unopposed Motion for Summary Judgment, because it does not utilize flitches as that term has been construed and each Asserted Claim requires a "flitch," then Miller does not infringe any Asserted Claim. Stated differently, if the flitches Miller Veneers utilizes do not meet the "flitch" claim limitation of claim 23, then they do not meet the same "flitch" claim limitation of any other Asserted Claim.  (A0417)

Miller's summary judgment motion also repeatedly and falsely stated that Capital had "stipulated" to a summary judgment of non-infringement.[9]  The parties had only stipulated to *dismissal of Miller's counterclaims*, and the District Court dismissed the counterclaims based on that Stipulation. (A212, A220).

### 3. <u>Capital's Response to Miller's Summary Judgment Motion.</u>

Rule 56 obligated Capital to respond to Miller's summary judgment motion with evidence that each asserted claim was infringed according to the revised claim constructions.   Capital's prior summary judgment motion had cited evidence of Miller's accused activities at the time.  (A0208 – "Expert Report of Richard Stamper" (A0923). Because Miller's summary judgment motion was filed much

---

[9]A partial list is: "its stipulations of noninfringement apply to all Defendants" (A0407, n.1; "Capital's stipulation of non-infringement," (A0412); "Because the Federal Circuit's affirmance of Capital's stipulations is dispositive . . ." (A0414); "Capital . . . stipulated that Miller does not infringe at least claim 23 of the '137 Patent." (A0414); "Capital stipulated that it could not prove infringement . . ." (A0414).

later (after the remand), Capital conducted limited discovery to see whether

Miller's post-appeal activities were also infringing in view of the amended claim

constructions.  Capital resubmitted its original evidence and it's more recent

evidence.  This was *overwhelming evidence* of Miller's infringement both *before

and after* the vacated judgment. (A0584-A0774; A1018-A1070(Confidential)).

This evidence created an issue of fact sufficient to avoid summary judgment.

Miller did not object to any of Capital's summary judgment evidence.

Instead, Miller's Reply made two main arguments.

For its first argument, Miller submitted an affidavit alleging that:

> "the equipment and procedures used to prepare, mount and retain, and
> slice flitches, have remained unchanged since March 4, 2009."
> (A0800, ¶ 8).

and

> Since this date, "Miller Veneers removed the top-to-bottom taper from
> all flitches before preparing them for slicing, mounting and retaining
> the untapered flitches on the veneer slicing equipment, and slicing the
> untapered flitches into veneer. This practice has not changed since
> Capital conducted its first inspection of Miller Veneers and continues
> to be Miller Veneers' practice today." (A0800, ¶ 9).

There are two telling conclusions from this.  First, Miller says nothing about

its practices *before* March 4, 2009, even though Capital's June 6, 2009 Complaint

allows it to recover for infringement going back to June 2003.   Second, Miller

only claims to have "removed the *top-to-bottom* taper" from its flitches; it does not

claim to have removed any side-to-side taper (or taper resulting from flitch ends being at an acute angle to the rest of the flitch). In short, now that the claims have been *properly* construed, *Miller cannot and does not deny infringement*.

For its second argument, Miller alleged that Capital should not be allowed to submit evidence regarding Miller's flitches or their "veneer producing zones" because Capital had previously "stipulated" Miller did not infringe because it lacked these elements. Again, Miller's repeated statements that Capital had made such stipulations[10] were untrue, as is plainly shown by Capital's original summary judgment motion. The only "stipulation" it contained was for dismissal of Miller's counterclaims. (A0212).

### H.     The District Court's (Second) Summary Judgment Ruling.

The District Court granted Miller's Motion for Summary Judgment for the reasons advanced in Miller's motion, stating that Capital's evidence "is irrelevant." (A0010 n6). Its ruling also stated:

_____

[10] A partial list is: "Thus, Capital's stipulation that it cannot prove infringement based upon this Court's construction of "veneer-producing zone" is binding on it." (A0782); "based on Capital's stipulation, any Asserted Claim that includes the "veneer-producing zone" element is also not infringed." (A0783); "Capital cannot avoid . . . the impact of its stipulation that Miller Veneers does not use tapered flitches" A0784; "Capital's prior stipulations . . . bar Capital from now claiming infringement" (A0787).

23

**the parties stipulated that certain claim constructions** adopted by the Court **foreclosed Capital Machine from being able to prove its infringement claims** ("Asserted Claims") and thus asked the Court to enter a Final Judgment of noninfringement in Miller Veneers' favor. [Dkt. 294.]  (A0001). *(emphasis added).*

Like Miller, the District Court misstated the scope of the parties' stipulation. The parties only stipulated to the *dismissal of Miller's counterclaims*, not to anything regarding the ability to prove infringement claims. (A0212, A0220).

Relying on its mistaken understanding about the scope of the "stipulation," the District Court stated:

> Because the Court's construction of "flitch" was affirmed by the Federal Circuit, Capital Machine's stipulation remains binding. . . The Court will not permit Capital Machine to change or otherwise explain away its binding stipulations, recharacterize its claims in order to circumvent the Federal Circuit's decision, or withdraw claims that clearly must be decided against it in light of the Federal Circuit's decision.
> (A002).

The basis for the District Court's "final judgment" is ambiguous.  The judgment suggests that it is merely following the Federal Circuit's *mandate*, but it also suggests that the judgment is based on Miller's *summary judgment motion*.

> The Federal Circuit held that it was "unclear" from this Court's Final Judgment whether its "construction of any one claim term is case-dispositive." *Capital Machine*, 524 Fed. Appx. At 651. It therefore remanded the case for this Court "to determine whether . . . summary judgment of noninfringement is appropriate with respect to any of the asserted claims." *Id.* For the above stated reasons, the Court concludes

that its construction of "flitch"—which was affirmed by the Federal
Circuit—is indeed dispositive of all the Asserted Claims.
Accordingly, the Court **GRANTS** Miller Veneers' Motion for
Summary Judgment, [dkt. 323]
(A0016).

If the District Court was merely "exercising its mandate" to determine
whether its *earlier* summary judgment of noninfringement remained appropriate,
then it should have: (a) explained how the evidence cited in the prior summary
judgment motion established non-infringement; and (b) found that Miller's later
summary judgment motion was moot. If the District Court was *really ruling on
Miller's summary judgment motion*, (which it expressly did) it should not have
ignored Capital's extensive summary judgment evidence as "irrelevant."

Perhaps the best guess is that the District Court was taking a belt and
suspenders approach, ruling that summary judgment was appropriate on either
basis. However, in view of this Court's corrected claim constructions, for either
motion, the summary judgment evidence before the Court should have been
considered. As that evidence created a fact issue regarding infringement, a
judgment of non-infringement should not have been entered.

Capital contends that the District Court erred in entering a final judgment on
either basis by resorting to a non-existent "stipulation," instead of examining the
evidence that was before it.

25

## VIII. SUMMARY OF ARGUMENT

### A. The Trial Court Erred In Granting Summary Judgment Because Capital's Evidence Created A Material Issue Of Fact As To Infringement.

In response to Miller's motion for summary judgment, Capital submitted evidence showing that Miller infringed. The District Court ignored this evidence stating that it "is irrelevant." The grant of summary judgment was error because according to Rule 56, Capital's evidence was relevant.

### B. The District Court Erred In Concluding That "Flitch" Is An "Element" of Capital's Apparatus Claims.

A "flitch" is not *an element* of Capital's apparatus claims, so they are infringed regardless of how flitch was construed. The test for whether a term in the preamble of an apparatus claim is a "claim limitation" is whether there is a "structurally complete invention in the claim body." *Vizio, Inc. v. International Trade Commission*, 605 F.3d 1330 (Fed. Cir. 2010). The Court erred by construing "flitch" to be an element of Capital's apparatus claims merely because the word "appears" in those claims.

### C. The District Court Erred In Stating That Capital Had Made A Stipulation Or Judicial Admission.

The lynchpin of the District Court's ruling was its statement that "Capital Machine stipulated that it could not prove the 'flitch' element under this Court's construction of that term." This is simply untrue. Capital only stipulated to

dismissal of Miller's counterclaim.  Capital's summary judgment motion was neither a "stipulation" nor a "judicial admission."  In any event, the part of the motion cited by the District Court was limited to Claim 23 of the '137 Patent, and was conditioned upon the definition of "butt end (as that term is understood)."  Because no court has ever construed the "at the butt end" language, there is no construction against which Capital's "understanding" can be measured.

### D. The Definition of "Flitch" Should Be Revised To Eliminate the "At The Butt End" Language.

The propriety of the "at the butt end" term in the definition of "flitch" has never been considered.  It should be eliminated because it is incompatible with this Court's summary of Capital's invention, which confirms that the relevant location for the taper is *between* the ends, not "*at* the butt end."  The definition of flitch should be changed to:

> Flitch - A portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper **between its ends** ~~**at the butt end of the log.**~~

### IX. ARGUMENT AND STANDARD OF REVIEW

### A. Standard of Review.

#### 1. Summary Judgment.

Review of a district court's grant of summary judgment is *de novo*, "applying the same criteria used by the district court in the first instance." *Cardiac*

*Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1355 (Fed. Cir., 2009). ("Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c).").

### 2. Claim Construction.

As patent claim constructions are matters of law, they are subject to *de novo* review without formal deference to the district court. *Cybor Corp. v. FAS Techs, Inc.*, 188 F.3d 1448, 1456 (Fed. Cir. 1998) *(en banc)*.

### B.    The Trial Court Erred In Granting Summary Judgment Because Capital's Evidence Created A Material Issue Of Fact As To Infringement.

### 1. Capital's Evidence Created Genuine Issues Of Fact.

This appeal should be easy. The ultimate resolution of any summary judgment motion boils down to whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In response to Miller's motion for summary judgment, Capital designated *substantial* evidence showing that Miller (and its co-defendants) infringed. The bulk of that evidence is included in the Declaration of Bill Koss, which includes

28

for each asserted claim, detailed citations to the evidence that show infringement. (A1018-A1070(Confidential); A0584-A0774). Most of the evidence in the Koss Declaration was also referenced in the Stamper Declaration (A0932-A1000), which the Court relied upon in entering its first, now-vacated, final judgment. The biggest difference is that the Stamper Declaration applied Capital's proposed claim interpretations, while the Koss Declaration applies the claim constructions as modified by this Court's Opinion. However, Miller's infringing activities and instrumentalities are shown in both.

The District Court ignored this evidence stating that it "is irrelevant." (A0010, n.6). This was error because according to Rule 56, Capital's evidence was relevant – its evidence created a material issue of fact as to Miller's infringement.

### 2. **This Court Should Reverse (Not Just Vacate) The Summary Judgment.**

This Court's review of the District Court's grant of summary judgment is *de novo*, and it is clear that Capital has established a material issue of fact as to each asserted claim. Therefore, this Court should reverse (not just vacate) the District Court's judgment. However, if this Court merely vacates the judgment, it should order the District Court to rule on Miller's motion for summary judgment in an opinion that: (a) discusses for each asserted patent claim, whether Capital's designated summary judgment evidence raises a fact issue as to each asserted

patent claim; and (b) considers only the evidence submitted in support of or opposition to the motion, but that excludes what the District Court characterized as "stipulations" of Capital.   Capital's motion is not "summary judgment evidence."

## C. The District Court Erred In Concluding That "Flitch" Is An "Element" of Capital's Apparatus Claims.

In granting summary judgment of non-infringement of Capital's apparatus claims, the District Court erred in concluding that "flitch" was an element of the apparatus claims.[11]  Whether "flitch" is an "element" of the apparatus claims is a question of claim construction, and thus reviewed *de novo*.

### 1. The Standard For Determining Whether A Term in A Claim Preamble Is An "Element" Of the Claim.

The test for whether a term in the preamble of an apparatus claim is a "claim limitation" is whether there is a "structurally complete invention in the claim body." *Vizio, Inc. v. International Trade Commission*, 605 F.3d 1330, 1340 (Fed. Cir. 2010).

*Vizio* involved a patent for decoding digital television broadcasts faster. Claim 1 was:

---

[11] Even if this Court finds that "flitch" is an element of the apparatus claims, summary judgment should still be reversed because, as discussed above, Capital's summary judgment evidence shows that Miller has used its machines with flitches within this Court's construction of that term.  (A0959-A0962; A1040-A1043).

1. **Apparatus for decoding a datastream** of MPEG compatible packetized program information containing program map information to provide decoded program data, comprising:

means for ***identifying*** channel map information conveyed within said packetized program information; and

means for ***assembling*** said identified information to form a channel map for identifying said individual packetized datastreams constituting said program,

wherein said channel map information replicates information conveyed in said MPEG compatible program map information and said replicated information associates a broadcast channel with packet identifiers used to identify individual packetized datastreams that constitute a program transmitted on said broadcast channel.

The preamble states that the apparatus is "for decoding," but neither of the "means" clauses specifically recited that it performed the "decoding" function. The defendant sold a "work around" system that did not do any "decoding," although it did "identifying" and "assembling." Because the patent specification and the preamble both stated the apparatus was for "decoding," the Federal Circuit concluded that it was "properly construed as a claim limitation." *Id*. at 1340.

This Court went on to observe that "[a] preamble is not limiting where a patentee *defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention*." *Id. (emphasis added). Vizio* is best understood as imputing a *functional* preamble term as a claim limitation when *none of the claim elements perform that function*.

Against this backdrop, a "flitch" is not an "element" of either claim 1 of the

'828 Patent or claim 1 of the '938 Patent.

## 2.  "Flitch" Is Not An Element Of Claim 1 Of The '828 Patent.

Claim 1 of Capital's '828 Patent, is:

> 1. An apparatus for preparing a **flitch** for slicing, the flitch including a veneer-producing zone and a staylog-engaging zone, **the apparatus comprising**:
>
>> **a plurality of cavity-forming tools**, said cavity-forming tools being arranged in a predetermined pattern,
>>
>> **a flitch holder** located to retain the flitch in a predetermined orientation relative to the plurality of cavity-forming tools, and
>>
>> **an actuator** for providing relative movement between the plurality of cavity-forming tools and the flitch holder.
>
> (A0520).

The claimed apparatus is for "preparing" a flitch, and recites three elements:

a "plurality of cavity-forming tools," a "flitch holder," and an "actuator."  The

preparation of a flitch is completed by holding it, then "actuating" movement of

the "cavity-forming tools" to a location where they can form cavities in a flitch.

While this apparatus may *work on* a flitch, the three elements alone define

"structurally complete invention in the claim body." *Vizio.*  Therefore, a flitch is

not *an element* of this claim.

## 3. "Flitch" Is Not An Element Of Claim 1 Of The '938 Patent.

Claim 1 of Capital's '938 Patent, is:

32

1. **An apparatus for retaining a flitch**, said flitch including a veneer-producing surface and a mounting surface having a plurality of cavities at predetermined positions in the flitch mounting surface, the apparatus comprising:

**a staylog**, and

**a plurality of dogs** coupled to the staylog **for retaining the flitch** on the staylog, the dogs being located at positions corresponding to the plurality of cavities in the flitch mounting surface and being formed to include a flitch engaging portion configured to engage at least a portion of the corresponding cavities and to position the veneer-producing surface for cutting. (A505)

This claims an "apparatus *for retaining* the flitch." Here, the "plurality of dogs" element states that it is "for retaining the flitch," so this element constitutes the "structurally complete invention in the claim body" required by *Vizio*. Thus, "flitch" should not be deemed an additional claim element.

The fact that a "flitch" is not an element of Claim 1 is further confirmed by the Defendants' quotation offering to sell infringing machines. This quotation lists the components of the machine, which include a "special staylog using the technology developed by Miller Veneers" that "provides for superior holding power and increased yield feature." (A0597). However, the quotation *does not* include a "flitch" with the machine. The reason is obvious – the buyer is a veneer mill that already has all the flitches it needs; what it needs is a machine to retain those flitches for cutting.

33

**D.    The District Court Erred In Stating That Capital Had Made A Stipulation Or Judicial Admission.**

The lynchpin of the District Court's ruling was its statement that "Capital Machine stipulated that it could not prove the "flitch" element under this Court's construction of that term." This is simply untrue; Capital never made such a statement. The only stipulation Capital made was to *dismiss Miller's counterclaim.* (A0212).

### 1.  Capital's Summary Judgment Motion Was Not a "Stipulation."

The essence of a stipulation is an *agreement of the parties*, albeit a judicially sanctioned one. *U.S. v. Harris*, 542 F.2d 1283, 1297 (7th Cir., 1976). (rejecting characterization as "stipulation" where "There is no indication in the record that the Government agreed to the purported stipulations.") Here, Miller never "agreed" to anything in Capital's summary judgment motion; it merely declined to oppose it. In fact, the document filed contains a separate section prominently labeled "IX. Stipulation of Dismissal." (A0212). The fact that the earlier sections of the filing were referred to as a "*motion* for summary judgment" and not a "*stipulation* for summary judgment" confirms that Miller declined to "agree" to everything that was in the motion. It is not surprising why. If Miller had "stipulated" that a particular claim element was "dispositive" of non-infringement, it would mean that if the judgment was reversed on appeal, Miller would be

34

foreclosed from arguing that it lacked some *other* element of the claim at issue, and make it much easier for Capital to prove infringement.  It is not surprising that Miller would refuse such a stipulation.

In contrast, the section "IX. Stipulation of Dismissal" includes language clearly manifesting the intent to stipulate:

> **[T]he parties stipulate** to the dismissal, without prejudice, of Millers' remaining counterclaims. **The parties further stipulate** that Miller may re-assert the counterclaims and affirmative defenses . . .  (A0212).

The District Court erred in characterizing any other part of the motion as a "stipulation."  Its error did not entitle the District Court to depart from its obligation under Rule 56 to decide the summary judgment motion based on "the pleadings, the discovery and disclosure materials on file, and any affidavits." *Cardiac Pacemakers, Inc.* at, 1355.

## 2. Capital's Summary Judgment Motion Was Not a "Judicial Admission" That It Could Not Prove That Miller Infringed.

The District Court's judgment included a back-up rationale for avoiding review of the evidence; it characterized Capital's "premises" as "judicial admissions:"

> Not only are the premises to which Capital Machine agreed properly classified as stipulations, they are judicial admissions.  See *Medcom Holding Co. v. Baxter*, 106 F.3d 1388, 1404 (7th Cir. 1997) ("Binding judicial admissions are 'any deliberate, ***clear and unequivocal***

statement, either written or oral, made in the course of judicial proceedings.'")
(A0010)

The starting point for considering this conclusion is what Capital

*actually* said in its motion:

> The Court's construction of the term "flitch" as "a portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper at the butt end of the log" is dispositive as to at ***least claim 23 of the '137 patent***. Plaintiffs allege that Miller has cut veneer from "untapered" flitches and flitches without ***"butt ends" (as that term is understood)***. The inclusion of the "tapered" and "butt end" limitations in the definition of "flitch" results in certain accused devices and practices of Miller being ***outside the scope of this patent claim*** as construed by the Court.
> (A0210)

Several points merit note:

- Out of the gate, Capital's use of the phrase "as that term is understood" makes it ineligible as a "judicial admission," because it is not "clear and equivocal." *Medcom Holding Co.*, at 1404.[12]  Neither the District Court, Capital nor even Miller had, at that time, articulated their "understanding" of the term "at the butt end," nor have they since.  As discussed above, this term is hopelessly ambiguous.

- The statement is limited to "claim 23 of the '137 patent."

---

[12] As discussed above, Capital contends that the "at the butt end" term is *very unclear* and *very* equivocal.

The District Court then stated:

> the Federal Circuit . . . held that "flitch" must be interpreted
> "consistently across all the patents."
> (A0005)

From this the District Court concluded,

> "It follows from this that if Capital Machine cannot prove that Miller
> Veneers' devices or methods infringe the "flitch" element for one Asserted
> Claim, then it cannot prove the "flitch" element for any of the Asserted
> Claims because "flitch" is given the same meaning across each of the
> patents-in-suit."
> (A0005)

This logic is flawed for several reasons.  First, Capital's *motion* was not

"summary judgment evidence;" it was not a part of "the pleadings, the discovery

and disclosure materials on file, and any affidavits."  *Cardiac Pacemakers, Inc.* at,

1355.  Second, the District Court improperly reinterpreted Capital's motion in view

of legal conclusions issued by this Court thirteen months later.  Third, Capital

clearly limited the applicable part of its motion to claim 23 of the '137 Patent.

That this term was *construed* to require a taper obviously does not preclude Capital

from proving infringement of *other patent claims* that *already* expressly required a

"tapered flitch," or that do not require any flitch at all.

### a) The District Court Should Not Have Retroactively Re-Interpreted Capital's Ambiguous Statement In View of This Court's Later Opinion.

The District Court retroactively *re-interpreted* Capital's ambiguous

statement in view of *this* Court's *later* conclusion about how the

construction of flitch "applies equally to limit the term 'flitch' in the other patents-in-suit." (A0375). What the District Court characterized as a "judicial admission" was not an "admission" *of Capital*, but a twice-removed misinterpretation made in view of this Court's Opinion issued thirteen months later. While this case will proceed under the ruling that the construction of "flitch" applies to all the patents-in-suit, when Capital filed its motion, it obviously understood differently. (A0248, A0330-A0348).

### b) Capital's Statement Was Clearly Limited To The '137 Patent, So It Can Not Be Viewed As Barring Claims Explicitly Requiring A "Tapered Flitch" Or That Do Not Require Any Flitch.

To be specific, Capital has always contended that the universe of Miller's "flitches" included *both* tapered and untapered flitches, but that the District Court's original construction of "flitch" wrongly excluded Miller's untapered flitches from infringement. The mere fact that this Court disagreed with Capital on this point and ruled that, for purposes of this case, a flitch has a taper, does not preclude Capital from continuing to assert its patent claims that have always required a "tapered flitch," or that do not require any flitch at all.

For example, in the *same* motion that District Court contends contains Capital's "stipulation," Capital explained that it was the construction of

"dogs" (not "flitch") that precluded it from proving infringement of claim 6

of the '843 Patent:

> "the Court's construction of the term "dogs" as "devices without
> movable parts that apply force to grip or retain a flitch on the veneer
> slicer" is dispositive as to noninfringement of at least . . . claim 6 of the
> '843 Patent." (A0210)

Claim 6 of the '843 Patent is:

> 6. A method for retaining a ***tapered flitch*** for cutting veneer from its
> tapered outer surface comprising:
>
> providing a staylog with a plurality of dogs;
>
> providing the flitch with a plurality of holes positioned to
> receive the plurality of dogs; providing relative motion between the
> plurality of dogs and the plurality of holes; and
>
> engaging the plurality of dogs with the flitch to retain the flitch
> in the staylog for cutting.
> (A0544).

This Court found that "dogs" had been misconstrued, so Capital is

free to continue to assert infringement of this claim. (A0379).  More

significantly, Capital never said it could not prove that Miller used a

"tapered flitch," as indicated by the fact that Capital has always been

asserting claims that expressly require a "tapered flitch."  Thus, the fact that

this Court found that "flitch" should be construed to having a "taper" cannot

possibly be the basis for now finding that this claim is not infringed.

39

Even if Capital's motion could be construed as comprising a "judicial admission" (and it should not, due to the "as that term is understood" limitation), its applicability is limited to the now-withdrawn '137 Patent. This Court's later conclusion that the terms should be applied consistently across all the Patents should not be used to re-interpret what Capital said in its motion.

### E.    The Definition of "Flitch" Should Be Revised To Eliminate the "At The Butt End" Limitation.

The propriety of the "at the butt end" term in the definition of "flitch" has never been expressed by the District Court or this Court.  As noted above, it utterly muddies the issues in this case.  If jurors are asked to construe "at the butt end," they will likely be confounded. The time to address this issue is now.

The "at the butt end" limitation should be eliminated because it is incompatible with this Court's summary of Capital's invention, which confirms that the relevant location for the taper is *between* the ends, not "*at* the butt end." The definition of flitch should be changed to:

> Flitch - A portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper **between its ends** ~~at the butt end of the log.~~

40

1. **This Court May Consider the Propriety of the "At the Butt End" Term.**

Capital expects Miller to argue that the definition of "flitch" should not be changed because it is "the law of the case" given this Court's prior opinion. However, because this Court never *expressly discussed* the "at the butt end" limitation in its earlier opinion, the propriety of this term cannot be considered to be "the law of the case."

Even if "the law of the case" doctrine does apply, this Court should still clarify this aspect of the meaning of "flitch." As claim construction is a matter of law, Courts routinely refine claim constructions throughout a case.[13] For example, revisiting a ruling on appeal is proper "to avoid clear error or to prevent a manifest injustice" *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994) or when occasioned by "discovery of new and material evidence" *Toro Co. v.*

---

[13] *Gerber Scientific Int'l, Inc. v. Roland DGA Corp*., 2011 U.S. Dist. LEXIS 57394 (D. Conn., May 27, 2011) (claims revised upon Motion for Reconsideration of Markman Ruling); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 2002 U.S. Dist. LEXIS 17 (S.D.N.Y. January 3, 2002) (claim construction changed upon summary judgment); *Huang v. Auto Shade, Inc.*, 945 F. Supp. 1307 (C.D. Cal. 1996) (claim construction changed at pre-trial conference); *Cordis Corporation v. Boston Scientific Corporation*, 658 F.3d 1347 (Fed. Cir., 2011) ("No rule of law restricted BSC from seeking to clarify or defend the original scope of its claim construction" via a post-trial renewed motion for judgment as a matter of law.).

*White Consolidated Industries, Inc.*, 383 F.3d 1326 (Fed. Cir., 2004).  Both "clear error" and "new and material evidence" are present here.

"Clear error" exists because this Court expressly found that Capital's invention was directed toward the taper existing along its length. (A0371-A0372).  However, construing a "flitch" to have a taper "at the butt end," (which is itself ambiguous) is at odds with the location of the taper that this Court found to be relevant.  Moreover, in its prior opinion, this Court did not discuss the "at the butt end" limitation, so it cannot be said that this aspect of the claim construction was "decided" by this Court.

In addition, revisiting the "at the butt end" term is appropriate because of the "new and material evidence."  To support its motion for summary judgment, Miller proffered the October, 2013 Declaration of Tom Miller, in which he states that Miller "removed the top-to-bottom" taper from all flitches."  (A0800, ¶ 9).  This evidence was "new" and "material" because it provides the context required to evaluate where the relevant location of the "taper" in Miller's flitches is located.

## 2. <u>The Location Of The Relevant Taper is "Between The Ends," Not "At The Butt End."</u>

The fact that the location of the taper of a flitch should be between its ends, and not "at the butt end," is self-evident from this Court's analysis of Capital's Patents.  Capital further reiterates that the rationale for adding the "tapered"

limitation was prosecution history disclaimer, but Capital said nothing about "butt ends" during prosecution of its Patents. (A0374-A0376).

**F.**    **The Issues In This Appeal Are The Same, Regardless Of Whether The Final Judgment Is Based On Miller's Summary Judgment Or The District Court Reconsidering Its Ruling On Capital's Summary Judgment On Remand.**

The District Court was inconsistent in stating the basis for its Final Judgment, but that inconsistency does not change the issues in this case because essentially the same summary judgment evidence was before the Court for both motions.

The Final Judgment states that it "GRANTS Miller Veneers' Motion for Summary Judgment, [dkt. 323]." (A0016). In view of this, the District Court should have considered Capitals opposing evidence instead of ignoring it as "irrelevant." When considered in view of the revised claim constructions, the evidence clearly shows Miller's infringement. (A0584-A0774; A1018-A1070(Confidential)).

However, in other places, the Final Judgment hints that it did not actually consider Miller's summary judgment motion (or Capital's evidence) because doing so might "stray outside of the Federal Circuit's relatively narrow charge to this Court on remand." (A0005).

43

Capital believes the Final Judgment is best construed as having granted Miller's Motion for Summary Judgment, because that motion was obviously "GRANTED." Given that ruling, the Court was obliged to consider the summary judgment evidence Capital submitted in opposition to that motion. Rule 56. However, *even if* the Final Judgment is viewed as the District Court merely reconsidering "on remand" whether the earlier summary judgment was proper, the Court should have considered the evidence cited in Capital's earlier summary judgment motion. As noted in that now-vacated final judgment, that evidence was "Plaintiffs' Amended Complaint and the Expert Report of Richard Stamper." (A0216, ¶ 2). This evidence was mostly duplicative of what Capital later proffered in opposing Miller's summary judgment motion, yet the Court did not consider that evidence either.

Regardless of whether the District Court used the new claim constructions to reconsider the evidence cited in the first final judgment or to rule on Miller's second summary judgment motion, it should have considered the evidence before it to determine whether Capital's evidence created an issue of fact. It did not do so, and that was error.

## X.    CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the Court should:

- Reverse the summary judgment of non-infringement of the following claims, which expressly recite a "tapered" flitch:

  o '995: Claim 34;

  o '619: Claims 30, 31 and 32; and

  o '843 Claims 6 and 7.

- Reverse the summary judgment of non-infringement of the following claims, which expressly recite a "tapered outer surface:"

  o 938: Claim 5, 33-37 and 42.

- Reverse the summary judgment of non-infringement of the following apparatus claims, because a "flitch" is not an element of these claims:

  o '938: claim 1; and

  o '828: claim 1.

- Order the District Court to use the following definition of flitch in further proceedings in this case:

  o Flitch - A portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper **between its ends.**

This should be ordered because it is beyond question that Miller has used flitches having a taper between their ends, and this construction is faithful to this Court's prior Opinion describing Capital's Patents.

- If this Court does not *reverse* the summary judgment, it should at least *vacate it*, and order the District court to rule on Miller's motion for summary judgment in an opinion that: (a)  discusses for each asserted patent claim, whether Capital's designated summary judgment evidence raises a fact issue as to each asserted patent claim; and (b) considers only the evidence submitted in support of or opposition to the motion, but that excludes what the District Court has characterized as "stipulations" of Capital.

- Award Capital the costs of this appeal; and

- Grant all further just and proper relief.

Respectfully submitted,


By:s/Paul B. Overhauser
Paul B. Overhauser
**Overhauser Law Offices, LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140-4019
Phone: 317-891-1500
Attorneys for Plaintiffs / Appellants

46

## ADDENDUM (Cir. Rule 28(a)(12))

Final Judgment (December 13, 2013) .................................................... A0001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAPITAL MACHINE COMPANY, INC., and IN-<br>DIANA FORGE, LLC,<br>     *Plaintiffs*,<br><br>     *vs.*<br><br>MILLER VENEERS, INC., *et al.*,<br>     *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

         1:09-cv-00702-JMS-DML

## <u>ORDER</u>

Capital Machine Company, Inc. and Indiana Forge LLC (collectively, "<u>Capital Ma-</u><u>chine</u>") filed this patent-infringement action against Miller Veneers, Inc. and several individual defendants (collectively, "<u>Miller Veneers</u>").  Presently pending before the Court are Miller Veneers' Motion for Summary Judgment, [dkt. 323], Capital Machine's Motion for Hearing, [dkt. 332], and Capital Machine's Objection to the Magistrate Judge's Order denying Capital Machine further discovery, [dkt. 346].

In a previous order in this case ("*Markman* Order"), the Court construed the disputed claim terms.  [Dkt. 247.]  Desiring to immediately appeal the Court's *Markman* Order, the parties stipulated that certain claim constructions adopted by the Court foreclosed Capital Machine from being able to prove its infringement claims ("<u>Asserted Claims</u>") and thus asked the Court to enter a Final Judgment of noninfringement in Miller Veneers' favor.  [Dkt. 294.]  The Court entered Final Judgment according to the terms stipulated by the parties, [dkt. 296], and Capital Machine appealed the Court's *Markman* Order to the Federal Circuit.

The Federal Circuit affirmed the Court's construction of the terms "flitch" and "veneer-producing zone," but reversed the Court's construction of the terms "staylog-engaging zone," "predetermined pattern/predetermined position," and "dogs."  *Capital Machine Co. v. Miller Ve-*

- 1 -

*neers, Inc.*, 524 Fed. Appx. 644 (Fed. Cir. 2013).  It then specifically charged this Court as follows: "It is unclear from the district court's final judgment . . . whether the construction of any one claim term is case-dispositive.  We therefore leave it to the court on remand to determine whether, in view of this opinion, summary judgment of noninfringement is appropriate with respect to any of the asserted claims."  *Id.* at 651.

Taking up the Federal Circuit's charge, this Court concludes that the construction of "flitch" is indeed case-dispositive as to all of Capital Machine's infringement claims.  In order to appeal the *Markman* Order, Capital Machine stipulated that it could not prove the "flitch" element under this Court's construction of that term.  Because the Court's construction of "flitch" was affirmed by the Federal Circuit, Capital Machine's stipulation remains binding.  Despite its binding stipulation, Capital Machine now makes a plethora of too-clever-by-half arguments that amount to nothing more than a desperate and disingenuous attempt to make an end-run around its earlier stipulations.  The Court will not permit Capital Machine to change or otherwise explain away its binding stipulations, recharacterize its claims in order to circumvent the Federal Circuit's decision, or withdraw claims that clearly must be decided against it in light of the Federal Circuit's decision.

Accordingly, for the reasons set forth below, the Court **GRANTS** Miller Veneers' Motion for Summary Judgment.  Because the parties' briefs afford the Court an adequate basis on which to rule without the assistance of oral argument, Capital Machine's Motion for Hearing is **DENIED**.  Finally, Capital Machine's Objection to the Magistrate Judge's Order denying discovery is **DENIED**.

# I.
## BACKGROUND

This patent infringement case involves disputed claims in six patents: U.S. Patent Nos. 5,562,137; 5,678,619; 5,694,995; 5,701,938; 5,819,828; and 7,395,843 (collectively, "patents-in-suit"). For ease of reading, the Court will refer to the patents-in-suit by only their last three numbers going forward, for example, the '137 Patent instead of Patent No. 5,562,137.

The relevant factual background was set forth in detail in the Court's *Markman* order, [dkt. 247], as well as in the Federal Circuit's opinion in this case, *Capital Machine*, 524 Fed. Appx. at 646-47. The Court need not repeat those facts and incorporates them by reference.

## A. *Markman* Order

The Court construed the disputed phrases in the above claims in its *Markman* Order. [Dkt. 247]. Specifically, the Court set forth controlling definitions for "flitch," "dogs," "engaging," "veneer-producing zone," "stay-log engaging zone," "predetermined pattern," "forming a plurality of holes simultaneously," "dado hole," "forming at least one dado hole," "cavities," "plurality of cavity forming tools," and "forming simultaneously a plurality of cavities." [*Id.* at 12-28.] Most relevant to the instant motion is the construction of "flitch." The Court defined "flitch" as "[a] portion of a log resulting from the log being cut along its longitudinal axis and thus having a taper at the butt end of the log."[1] [*Id.* at 12.] Critically, this Court determined that the term "flitch" as used in the patents-in-suit refers exclusively tapered flitches.

As noted, this construction prompted the parties to file a joint motion asking the Court to enter summary judgment in favor of Miller Veneers on all of Capital Machine's infringement claims and to dismiss all of Miller Veneers' counterclaims without prejudice. [Dkt. 294.] As

---

[1] Capital Machine sought reconsideration of the *Markman* Order, but the Court denied the motion. [Dkt. 283.]

relevant here, the parties agreed that the Court's construction of "flitch" was "dispositive as to at least claim 23 of the '137 patent." [*Id.* at 4.] The construction was dispositive as to this claim, the parties explained, because "[Capital Machine] allege[s] that Miller [Veneers] has cut veneer from 'untapered' flitches and flitches without 'butt ends' (as that term is understood). The inclusion of 'tapered' and 'butt end' limitations in the definition of 'flitch' results in certain accused devices and practices of Miller [Veneers] being outside the scope of this patent claim as construed by the Court." [*Id.*] The Court granted the parties' motion and entered Final Judgment on the grounds outlined by the parties. [Dkt. 296.] Capital Machine then appealed the Court's *Markman* Order to the Federal Circuit.

### B.   Appeal of *Markman* Order

On appeal, Capital Machine challenged several of the claim constructions set forth in this Court's *Markman* Order. *See Capital Machine*, 524 Fed. Appx. at 647-51. The Federal Circuit specifically addressed the Court's construction of "flitch," "staylog-engaging zone," "predetermined pattern," "veneer-producing zone," and "dogs." *See id.* Most relevant here, the Federal Circuit affirmed the Court's conclusion that "flitch" means a tapered flitch and further held that the term must be interpreted "consistently across all of the patents." *Id.* at 649. Furthermore, the Federal Circuit affirmed the Court's construction of "veneer-producing zone," while reversing at least part of the Court's construction of "staylog-engaging zone," "predetermined pattern," and "dogs." *See id.* at 649-51.

After noting that the parties' other arguments were "without merit," the Federal Circuit remanded the case to this Court to determine the impact of its ruling. Specifically, the Federal Circuit ordered a specific review on remand: "It is unclear from the district court's final judgment . . . whether the construction of any one claim term is case-dispositive. **We therefore**

- 4 -

**leave it to the court on remand to determine whether, in view of this opinion, summary judgment of noninfringement is appropriate with respect to any of the asserted claims.**"[2] *Id.* at 651(emphasis added.)  The Court must now decide this limited issue.

## II.
### DISCUSSION

The parties vigorously dispute the impact the Federal Circuit's decision has on the Asserted Claims.  However, many of their arguments, and all of their newly submitted evidence, stray outside of the Federal Circuit's relatively narrow charge to this Court on remand, as highlighted above.  *Capital Machine*, 524 Fed. Appx. at 651.  Unless necessary, the Court will not – and indeed should not – reach beyond the Federal Circuit's directive to address the parties' recasted arguments.  Instead, taking up the prescribed charge, the Court has examined the patents-in-suit, and applied this Court's and the Federal Circuit's construction of the term "flitch" along with the parties' prior stipulations to them.  As discussed in more detail below, this review establishes that summary judgment of noninfringement is appropriate as to all of the Asserted Claims.

The Court begins its analysis with what is not in dispute.  First, on appeal, the Federal Circuit affirmed this Court's construction of "flitch."  *Capital Machine*, 524 Fed. Appx. at 647-49.  And it held that "flitch" must be interpreted "consistently across all the patents."  *Id.* at 649. It follows from this that if Capital Machine cannot prove that Miller Veneers' devices or methods infringe the "flitch" element for one Asserted Claim, then it cannot prove the "flitch" element for any of the Asserted Claims because "flitch" is given the same meaning across each of

---

[2] Due to the Federal Circuit's specific charge to this Court, and the Court's ultimate conclusion that summary judgment of noninfringement is warranted as to all of the Asserted Claims, the Court denies Capital Machine's objection to the Magistrate Judge's Order denying further discovery, [dkt. 346], as further discovery in no way impacts, and thus is outside the scope of, the Federal Circuit's mandate to this Court.

the patents-in-suit..  Second, both parties recognize that, to succeed on an infringement claim, each element of an individual claim must be present.  [*See* dkts. 324 at 14; 327 at 14.]  This legal proposition is well-settled.  *See, e.g.*, *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012) ("To prove literal infringement, a plaintiff must show that the accused device contains each and every limitation of the asserted claims."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011) ("To prove infringement, the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device.").  Thus, if Capital Machine cannot prove the presence of one element of any Asserted Claim, Miller Veneers is entitled to summary judgment on that entire claim.

Taken together, these two propositions dictate that if the Court's construction of "flitch" prevents Capital Machine from proving infringement as to any one claim, Miller Veneers is entitled to summary judgment on each of the Asserted Claims having "flitch" as an element.  In the end, the Court agrees with Miller Veneers that Capital Machine stipulated that the Court's construction of the "flitch" element was dispositive, and that stipulation binds Capital Machine throughout the case because all of the Asserted Claims include the element "flitch."  This inescapably leads to the conclusion that summary judgment in favor of Miller Veneers is warranted on all of the Asserted Claims.

### A. Capital Machine Stipulated that the Court's Construction of the "Flitch" Element was Dispositive of one of the Asserted Claims and that Stipulation is Binding

Despite Capital Machine's protestations to the contrary, [*see, e.g.*, dkt. 348 at 18], it stipulated that the Court's construction of the "flitch" element was dispositive of one of the Asserted Claims.  As detailed above, the parties' sought to appeal this Court's *Markman* Order and thus filed an Unopposed Motion for Summary Judgment.  [Dkt. 294.]  In pertinent part, the parties'

asserted: "The Court's construction of the term 'flitch' . . . is dispositive as to at least claim 23 of the '137 patent. [Capital Machine] alleges that Miller [Veneers] has cut veneer from 'untapered' flitches and flitches without 'butt ends' (as this term is understood). [These] . . . limitations in the definition of 'flitch' results in certain accused devices and practices of Miller being outside the scope of this patent claim as construed by the Court." [*Id.* at 4.]

An explanation of why Capital Machine agreed to entry of Final Judgment in Miller Veneers' favor aids in elucidating why the stipulation is binding. Under the so-called final judgment rule, Capital Machine could only appeal a "final decision" of this Court. 28 U.S.C. § 1295. But the Court's *Markman* Order was not that—the Court had not yet resolved, among other things, whether based on the claim constructions, Capital Machine could prove any of the Asserted Claims. Capital Machine, for strategic or other reasons, desired to immediately appeal several of the Court's claim constructions. But to do so, it needed to comply with the final judgment rule. It therefore stipulated that Miller Veneers cuts veneer from untapered flitches—*i.e.*, flitches falling outside this Court's construction of "flitch"—making the "flitch" element dispositive as to one of its infringement claims.[3] [Dkt. 294]. In conjunction with Miller Veneers' agreed dismissal of its counterclaims, this stipulation enabled the Court to enter Final Judgment, which in turn allowed Capital Machine to appeal this Court's construction of "flitch." *See Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003) (recognizing this as one of the four ways in which parties can appeal a district court's claim construction in accordance with

---

[3] Notably, Capital Machine could not have entered into a generalized stipulation of noninfringement and appealed the Court's construction of "flitch." To do so, Capital Machine had to ensure that the Final Judgment made clear that the "flitch" construction "would actually affect the issue of infringement," because if it did not, the Federal Circuit would "risk rendering an advisory opinion as to claim construction issues" in violation of Article III. *Jang v. Boston Scientific Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008).

the final judgment rule); *see also CAE Screenplates, Inc. v. Heinrich Fielder GmbH & Co. KG*, 224 F.3d 1308, 1314 (Fed. Cir. 2000) ("[The Federal Circuit] . . . may exercise jurisdiction only if the district court's entry was final relative to all the pending issues.").

Now that Capital Machine has taken the appeal and lost, it argues that its stipulation regarding "flitch"—which was what enabled it to appeal in the first place—was not a stipulation at all. [Dkt. 348 at 18.] Indeed, Capital Machine's characterization of what occurred is telling. It contends that "it neither made any 'stipulation,' nor did this Court 'hold' 'that Miller [Veneers] does not cut flitches. Instead, this Court merely entered judgment that . . . claim 23 of the '137 Patent was not infringed."[4]  [*Id.*]  The former statement is disingenuous, while the latter is, at best, a significant gloss on what occurred.  Unpacking the parties' statements in the Unopposed Motion for Summary Judgment makes clear that Capital Machine stipulated to precise factual premises and the legal conclusion flowing therefrom.  Specifically, Capital Machine agreed to two premises—that Miller Veneers cuts certain types of flitches (those that are untapered without butt ends) and that those flitches do not fall under this Court's construction of flitch (which requires the flitch to taper at the butt end). [Dkt. 294 at 4.] It also agreed to the ultimate legal con-

---

[4] Capital Machine attempts to withdraw claim 23 of Patent '137. [Dkts. 327 at 16.] But as mentioned above, this attempt to withdraw the claim that the Federal Circuit's opinion most assuredly resolves in Miller Veneers' favor, without the consent of Miller Veneers, is one of several overly clever attempts by Capital Machine to avoid what the Federal Circuit's opinion requires. Capital Machine's attempt to withdraw this claim will not be permitted by the Court. Even if it were withdrawn, the withdrawal cannot contravene the Federal Circuit's holding that the term "flitch" must be construed "consistently across all the patents," *Capital Machine*, 524 Fed. Appx. at 649.

- 8 -

clusion flowing from these premises—that this Court's construction of "flitch" was "dispositive as to at least claim 23 of the '137 patent." [5] [*Id.*]

As set forth above, Capital Machine agreed to these premises in order to obtain an appealable final judgment.  *See Nystrom*, 339 F.3d at 1350; *CAE Screenplates*, 224 F.3d at 1314.  It cannot now argue that these were not stipulations, as this position is belied by the plain language of the parties' motion.  Moreover, acceptance of Capital Machine's position would allow it to manipulate the final judgment rule.  Capital Machine obtained the Final Judgment it desired by stipulating that this Court's construction of the "flitch" element was dispositive of its ability to prove infringement, which allowed it to appeal the Court's construction of "flitch."  But even though the Court's construction of "flitch" was affirmed, Capital Machine turns around and contends that it never stipulated that this Court's construction was dispositive.  Such maneuvering would only serve to circumvent the final judgment rule and will not be allowed.  *Cf. CAE Screenplates*, 224 F.3d at 1315 (criticizing a joint motion for entry of final judgment that did not specifically concede noninfringement because it allowed the party seeking to appeal to "pursue relief from the district court no matter how [the Federal Circuit] rules").

This is but one of several attempts by Capital Machine to impermissibly disavow positions it previously adopted in this litigation as soon as those positions no longer suit its ends.  Such practice, of course, cannot be permitted.  Both the clear language of the Unopposed Motion for Summary Judgment and Capital Machine's need to satisfy the final judgment rule in order to appeal establish that Capital Machine stipulated that, under this Court's construction of "flitch," it could not prove infringement of claim 23 of Patent '137.  And the Seventh Circuit could not be

---

[5] This Court relied on these stipulations in concluding that summary judgment in favor of Miller Veneers was appropriate and, explicitly recited these stipulations in entering Final Judgment. [Dkt. 296 at 3.]

more clear that "stipulations and concessions bind those who make them." *Consolidation Coal v. Director*, 732 F.3d 723, 730 (7th Cir. 2013); *see Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1068 (7th Cir. 2000) ("Voluntary stipulations bind the parties."); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1173 (7th Cir. 1998) ("This Court has previously held that stipulations, entered voluntarily, 'bind the parties themselves.'"). Indeed, "[t]o hold anything else," as Capital Machine urges the Court to do, "would be to reduce stipulations to mere inconsequential gestures." *River*, 160 F.3d at 1173. Not only are the premises to which Capital Machine agreed properly classified as stipulations, they are judicial admissions. *See Medcom Holding Co. v. Baxter*, 106 F.3d 1388, 1404 (7th Cir. 1997) ("Binding judicial admissions are 'any deliberate, clear and unequivocal statement, either written or oral, made in the course of judicial proceedings.'") (quoting *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D. Ill. 1993)). Judicial admissions such as these "are binding upon the party making them" and, instead of being evidence, "have the effect of withdrawing a fact from contention."[6] *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (citations and quotation marks omitted).

In sum, Capital Machine is bound by the stipulations made in the Unopposed Motion for Summary Judgment that this Court's construction of flitch is dispositive of its ability to prove that Miller Veneers infringed claim 23 of Patent '137. [Dkt. 294 at 4.] The Federal Circuit affirmed the Court's construction of "flitch," *Capital Machine*, 524 Fed. Appx. at 647-49, thus the binding stipulation that this Court's construction of "flitch" is dispositive as to that claim remains controlling in this case.

---

[6] Among other reasons, this is why Capital Machine's reliance on evidence from a recent post-appeal inspection of Miller Veneers' facilities that allegedly revealed that Miller Veneers cuts veneer from tapered flitches—that is, flitches that fall within this Court's construction of the term—is irrelevant. By stipulating to the contrary, Capital Machine withdrew this "fact from contention." *Keller*, 58 F.3d at 1198 n.8 (citations and quotation marks omitted).

Once the Court relied on the parties' stipulations in entering Final Judgment, the Court's resolution of the "flitch" issue became the law of the case, meaning that it continues to control. *See Jarrad v. CDI Telecommunications, Inc.*, 408 F.3d 905, 911-12 (7th Cir. 2005). And the law of the case doctrine applies even in cases such as this when a previously entered Final Judgment is reversed on appeal. As the Seventh Circuit explained, "If a final judgment had been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge would be required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court." *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993). As none of the Court's rulings regarding "flitch" were "set aside by the appellate court," this Court is "required to adhere on remand to the rulings . . . made before the case was first appealed," *id.*, which includes the conclusion that summary judgment in favor of Miller Veneers on claim 23 of Patent '137 is warranted.

Accordingly, the Court concludes that summary judgment in favor of Miller Veneers remains appropriate on claim 23 of Patent '137. As discussed in detail above, because "flitch" is interpreted "consistently across all the patents," *Capital Machine*, 524 Fed. Appx. at 649, this Court's construction of "flitch" is dispositive of each Asserted Claim with "flitch" as an element. The question thus becomes which of the Asserted Claims has "flitch" as an element. Capital Machine rightly concedes that "all of [its] *method* claims require [the element] 'flitch,'" but ar-

gues that "its two *apparatus* claims do not."[7]  [Dkt. 327 at 17 (emphasis in original).]  Miller

Veneers is therefore entitled to summary judgment on all of Capital Machine's method claims.[8]

The Court must, however, address the disputed issue of whether "flitch" is also an element of Capital Machine's two apparatus claims.  In the end, the Court concludes that "flitch" is an element of the apparatus claims, necessitating summary judgment on those claims as well.

### B.    "Flitch" is an Element of Capital Machine's Apparatus Claims

The parties dispute whether "flitch" is an element of Capital Machine's two apparatus claims: claim 1 of Patent '938 and claim 1 of Patent '828.  The full language of each of those claims is set forth here.

> Claim 1 of Patent '938: An apparatus for retaining a flitch, said flitch including a veneer-producing surface and a mounting surface having a plurality of cavities at predetermined positions in the flitch mounting surface, the apparatus comprising: a staylog, and a plurality of dogs coupled to the staylog for retaining the flitch on the staylog, the dogs being located at positions corresponding to the plurality of cavities in the flitch mounting surface and being formed to include a flitch-engaging portion configured to engage at least a portion of the corresponding cavities and to position veneer-producing surface for cutting.

> Claim 1 of Patent '828: An apparatus for preparing a flitch for slicing, the flitch including a veneer-producing zone and a staylog-engaging zone, the apparatus comprising: a plurality of cavity-forming tools, said cavity-forming tools being arranged in a predetermined pattern, a flitch holder located to retain the flitch in a

---

[7] Capital Machine's method claims are as follows: claim 23 of Patent '137; claims 12, 13, and 16 of Patent '995; claims 30, 31, and 32 of Patent '619; claims 5, 33, 36, 37, and 42 of Patent '938; claims 10, 11, 14, and 15 of Patent '828; and claims 6 and 7 of Patent '843.

[8] The Court notes that the same logic that leads the Court to conclude that summary judgment in favor of Miller Veneers is appropriate with respect to every Asserted Claim containing the element "flitch" equally requires summary judgment in favor of Miller Veneers for every Asserted Claim containing the element "veneer-producing zone."  This is because, like "flitch," Capital Machine stipulated that it could not prove this element as construed by this Court, [dkt. 294 at 4-5], and the Federal Circuit affirmed this Court's construction of "veneer-producing zone," *Capital Machine*, 524 Fed. Appx. at 650.  The Court's reasoning with respect to "flitch" results in summary judgment in favor of Miller Veneers as to all the Asserted Claims, but if it did not the "veneer-producing zone" construction may well provide an alternative basis for summary judgment on each claim containing it.

predetermined orientation relative to the plurality of cavity-forming tools, and an actuator for providing relative movement between the plurality of cavity-forming tools and the flitch holder.

[Dkts. 325-5 at 12; 325-6 at 13.]

Capital Machine contends that "flitch" is not an element in either of its apparatus claims. [Dkt. 327 at 17-18.]  Miller Veneers disagrees for several reasons.  Most importantly, it points to the fact that both this Court and the Federal Circuit have recognized that disclaimers during the prosecution of the patents-in-suit limited them, and thus the Asserted Claims based thereon, to tapered flitches, making "flitch" a limitation to all the Asserted Claims.  [Dkt. 336 at 10.]  The parties also dispute whether "flitch" qualifies as a claim limitation, given that it is found in the preamble of the apparatus claims.  [*See* dkts. 325-5 at 12; 325-6 at 13.]

"In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim."  *Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1366 (Fed. Cir. 2010) (quoting *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008)) (quotation marks omitted).  "Whether to treat a preamble as a limitation is a determination resolved only on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (alterations in original) (citation and quotation marks omitted).  "A term is often limiting when the patentee has relied on it during prosecution to distinguish prior art, as such reliance demonstrates that the feature disclosed in the preamble is necessary to the patentability of the claim."  *Hearing Components*, 600 F.3d at 1366; *see Catalina Mktg. Int'l*, 289 F.3d at 808.

- 13 -

A0013

The Court need not delve into the parties' arguments in great detail, as the Federal Circuit's decision makes clear that "flitch" is a limitation of all the Asserted Claims, including the apparatus claims. In construing the term "flitch," the Federal Circuit began by noting that the term "appears in every asserted claim." *Capital Machine*, 524 Fed. Appx. at 648. It then quoted several explicit disclaimers made by Capital Machine during the prosecution of the patents-in-suit whereby Capital Machine made clear that the patents-in-suit dealt specifically with tapered flitches. *See id.* at 648-49. For example, Capital Machine repeatedly distinguished Weil patents on the ground that they are "silent with respect to[] *tapered* flitches and their cutting." *Id.* at 648 (emphasis in original) (citations and quotation marks omitted). Especially pertinent to the apparatus claims is the Federal Circuit's recognition that "Capital [Machine] made similar arguments during prosecution of the '938 patent, stating that '[n]othing in Weil '874 discloses or suggests use of a tapered flitch.'" *Id.* at 649 (second alteration in original) (citation omitted). Further, it held that "each patent-in-suit has clear and unmistakable prosecution history disclaimer in either a parent or a child," and thus "flitch" had to be interpreted "consistently across all the patents." *Id.* at 649. In sum, the Federal Circuit relied solely on Capital Machine's disclaimers in concluding that "flitch" means tapered flitch in each patent-in-suit. *See id.* at 647-49.

This Court would contravene the Federal Circuit's binding decision if it were to now hold that, even though the term "flitch" in the apparatus claims refers specifically to tapered flitches, "flitch" is not a limitation of those claims. As noted above, the Federal Circuit construes terms in the preamble as claim limitations "when the patentee has relied on it during prosecution to distinguish prior art, as such reliance demonstrates that the feature disclosed in the preamble is necessary to the patentability of the claim." *Hearing Components*, 600 F.3d at 1366. As detailed above, the Federal Circuit determined that this is precisely what occurred. Capital Machine re-

- 14 -

peatedly highlighted the fact that its patents specifically related to *tapered* flitches in distinguishing Weil patents.  *See Capital Machine*, 524 Fed. Appx. at 648-49.  This causes the relied upon distinguishing characteristic found in the claims' preambles to function as claim limitations.  *See Hearing Components*, 600 F.3d at 1366 (holding that the phrase "readily installed" found in the claim's preamble was a claim limitation because the plaintiff "relied on the 'readily installed' phrase during prosecution to distinguish prior art"); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 835 (Fed. Cir. 2003) (holding that the district court properly construed a preamble phrase as a claim limitation because, among other reasons, "[t]he applicants . . . relied on [that phrase] in distinguishing their invention over prior art"); *cf. Textron Innovations, Inc. v. Am. Eurocopter Corp.*, 498 Fed. Appx. 23 (Fed. Cir. 2012) (holding that the prosecution history does not require a preamble phrase to be treated as a claim limitation because "nothing in the . . . prosecution history states, or even suggests" that the plaintiff intended to so limit its claim); *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1342 (Fed. Cir. 2012) (declining to rely on statements made during the prosecution history because they did not "clearly and unmistakably disclaim scope or meaning") (citation and quotation marks omitted).  In sum, Capital Machine again attempts to take a position contrary to one it previously took.  Capital Machine cannot distinguish other patents on the ground that its patents deal solely with tapered flitches, but then contend that its patents can be infringed without having to prove that the infringing apparatuses or methods involved tapered flitches.  *See Hearing Components*, 600 F.3d at 1366.

Accordingly, the Court concludes that "flitch" functions as a claim limitation of Capital Machine's apparatus claims—that is, it is a necessary element Capital Machine must prove to prevail on these claims.  For the reasons discussed in the previous section, Capital Machine stip-

ulated that the "flitch" element was dispositive, resulting in summary judgment in Miller Veneers' favor on all the Asserted Claims.[9]

### III.
### CONCLUSION

The Federal Circuit held that it was "unclear" from this Court's Final Judgment whether its "construction of any one claim term is case-dispositive." *Capital Machine*, 524 Fed. Appx. at 651. It therefore remanded the case for this Court "to determine whether . . . summary judgment of noninfringement is appropriate with respect to any of the asserted claims." *Id.* For the above stated reasons, the Court concludes that its construction of "flitch"—which was affirmed by the Federal Circuit—is indeed dispositive of all the Asserted Claims. Accordingly, the Court **GRANTS** Miller Veneers' Motion for Summary Judgment, [dkt. 323], **DENIES** Capital Machine's Motion for Hearing, [dkt. 332], and **DENIES** Capital Machine's Objection to the Magistrate Judge's Order, [dkt. 346]. Final judgment will issue accordingly.[10]

---

[9] Capital Machine argues that even if "flitch" is an element of its apparatus claims, it can now prove this element because it submitted evidence showing that Miller Veneers has used tapered flitches on the allegedly infringing apparatuses. [Dkt. 348 at 11-14.] For the same reasons discussed above, reliance on such evidence strays outside the Court's limited charge on remand, and, more importantly, Capital Machine's stipulation to the contrary remains binding. Should Capital Machine believe Miller Veneers has materially changed its methods and apparatuses so that they now infringe on Capital Machine's patents, Capital Machine must file a new suit to pursue those claims, provided that such suit complies with the requirements of Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

[10] The Court dismissed Miller Veneers' counterclaims without prejudice to its right to re-assert those claims should the Federal Circuit remand the case back to this Court. [Dkt. 296 at 6.] Because Miller Veneers has not reasserted its counterclaims, the grant of summary judgment in its favor on all of Capital Machine's Asserted Claims finally resolves all of the claims in this suit.

A0016

12/13/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Michael A. Swift
MAGINOT MOORE & BECK LLP
maswift@maginot.com

Brady J. Rife
MCNEELY STEPHENSON THOPY & HARROLD
brady.j.rife@msth.com

Charles B. Daugherty
MCNEELY STEPHENSON THOPY & HARROLD
cbdaugherty@msth.com

Cynthia A. Bedrick
MCNEELY STEPHENSON THOPY & HARROLD
cabedrick@msth.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e). The brief contains 9,135 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), and Fed. Cir. Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and Time Roman 14 point font.

Respectfully submitted,


By:___ s/Paul B. Overhauser_
Paul B. Overhauser
**Overhauser Law Offices, LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140-4019
Phone: 317-891-1500
Attorneys for Plaintiffs / Appellants

## PROOF OF SERVICE

The undersigned hereby certifies that on February 21, 2014, the undersigned electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that services will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

By: s/Paul B. Overhauser
Paul B. Overhauser
**Overhauser Law Offices, LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140-4019
Phone: 317-891-1500
Attorneys for Plaintiffs / Appellants